

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| **MARY BRACY,** | ) | **Docket No. 2021-08-0660** |
| **Employee,** | ) | |
| **v.** | ) | |
| **SMITH & NEPHEW, INC.,** | ) | **State File No. 45693-2021** |
| **Employer,** | ) | |
| **And** | ) | |
| **TRAVELERS INDEMNITY CO.,** | ) | |
| **Carrier.** | ) | **Judge Deana Seymour** |
| | ) | |

---

## EXPEDITED HEARING ORDER

---

The Court held an Expedited Hearing on February 18, 2022, to determine Mary Bracy's entitlement to medical and temporary disability benefits from a bilateral knee injury. Smith & Nephew opposed Ms. Bracy's request because her authorized treating physician released her at maximum medical improvement with no further treatment recommendations. Based on the proof, the Court holds Ms. Bracy is likely to prevail at trial on her claim for medical but not temporary disability benefits.

### History of Claim

On March 17, 2021, Ms. Bracy injured her right knee after moving a pallet jack at work. Smith & Nephew accepted her claim and provided a panel of physicians. She selected Dr. John Lochemes and received conservative treatment for patellofemoral syndrome. Dr. Lochemes ordered physical therapy, but Ms. Bracy never received it. He did not take Ms. Bracy off work or restrict her activities.

Two months into her treatment, Ms. Bracy complained of left-knee pain. She advised that her left-knee pain was present at the time of her initial injury, but her right-knee pain was more profound. Her left-knee symptoms increased after Smith & Nephew returned her to work on the pallet jack.

1

Diagnostic testing of both knees revealed severe chondromalacia and possible ganglion cysts. The imaging reports did not note definite meniscal tears.[1]

On June 28, Dr. Lochemes discharged Ms. Bracy at maximum medical improvement. He wrote,

> During the examination[,] questions were answered[,] and many were asked by the patient. A free exchange of information took place but at the same time the patient felt dissatisfied with explanations and answers I was providing.

> Its [sic] apparent that the patient's trust in my care h[a]s diminished significantly and as such I don't feel I can no longer [sic] offer her significant benefit moving forward. As such, I recommend she pursue other treatment that she feels will benefit her.

Dr. Lochemes acknowledged that physical therapy was not done.[2] Still, he recommended no further treatment and gave Ms. Bracy a left-knee brace.

Afterward, Ms. Bracy requested ongoing medical treatment, and Smith & Nephew provided additional panels. Unfortunately, the first two physicians Ms. Bracy selected refused to treat her. Ultimately, she agreed to see Dr. Bret Sokoloff but did not attend the appointments.[3] So, Smith & Nephew refused to offer any additional treatment for her knees.

According to Ms. Bracy, she did not remember receiving notification about the appointments with Dr. Sokoloff. In addition, she emphatically denied failing to call or show for any appointments. However, adjuster Christina Kilby stated in her affidavit, and occupational health nurse Martha Herron testified, that Ms. Bracy knew about the appointments.

Ms. Bracy testified that her left knee continues to hurt, and Dr. Lochemes never explained her left-knee MRI results or gave her a diagnosis for her left knee before he ended her care. She attributed Dr. Lochemes's decision to stop treatment on his unwillingness to answer her questions. Ms. Bracy asked the Court to order Smith &

---

[1] Even though the diagnostic testing found no definite meniscal tears, the assessment section of Dr. Lochemes's June 28, 2021 office note stated Ms. Bracy had a tear in the medial meniscus of her left knee. However, the note later reads, "the only findings in the knees were arthritis and things which maybe [sic] symptomatic but likely will resolved [sic] over time."

[2] Dr. Lochemes's records reveal that he ordered physical therapy multiple times, including just ten days before he ended treatment.

[3] According to Smith & Nephew, it offered Ms. Bracy a fourth panel listing Dr. Sokoloff as a choice. However, a fourth panel was not introduced into evidence.

Nephew to provide additional medical care and requested that the forty hours of sick time she used while treating for her knees be returned to her, since she had not worked since June 24.[4]

Smith & Nephew refused to offer additional medical treatment, arguing that Dr. Lochemes released Ms. Bracy at maximum medical improvement with no further treatment recommendations. It maintained that Ms. Bracy was non-compliant with medical treatment and failed to show a need for additional care, citing *Tate v. BWay Corp.*, 2019 TN Wrk. Comp. App. Bd. LEXIS 85 (Dec. 20, 2019), and *Coolidge v. City Winery Nashville, LLC*, 2016 TN Wrk. Comp. App. Bd. LEXIS 46 (Sept. 23, 2016). Smith & Nephew further maintained that Ms. Bracy was not entitled to temporary disability benefits, since no doctor restricted her from work.

### Findings of Fact and Conclusions of Law

Ms. Bracy must show that she is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2021); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

The primary issue is whether Ms. Bracy is entitled to additional medical treatment after Dr. Lochemes released her at maximum medical improvement with no further recommended treatment.

Tennessee Code Annotated section 50-6-204(a)(1)(A) (2021) requires an employer to "furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter." Dr. Lochemes's maximum medical improvement determination does not end Ms. Bracy's entitlement to ongoing medical treatment for her work-related injury. *See Kennedy v. Lakeway Auto Sales, Inc.*, No. E2010-02422-WC-R3-WC, 2011 Tenn. LEXIS 842, at *8-10 (Tenn. Workers' Comp. Panel Aug. 30, 2011). Moreover, Tennessee law has long held that medical proof is not to be "read and evaluated in a vacuum" but instead "must be considered in conjunction with the lay testimony of the employee to how the injury occurred and the employee's subsequent condition." *Thompson v. Aetna Life & Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991).

It is said that breaking up is hard to do, and this sentiment rings especially true in the context of a doctor-patient relationship. Here, the relationship between Dr. Lochemes and Ms. Bracy became irreconcilably strained. In Dr. Lochemes's words, he chose to stop treating Ms. Bracy because her trust in his care had "diminished significantly."

A review of Dr. Lochemes's records revealed that he started treating Ms. Bracy's

---

[4] The Dispute Certification Notice identifies temporary disability benefits as an issue.

left knee mere days before he discharged her. The physical therapy he ordered ten days before he released her was not completed. On the day Dr. Lochemes ended Ms. Bracy's treatment, he noted the results of her left-knee MRI, which was performed three days earlier, and gave her a left-knee brace.

Further, Ms. Bracy testified that Dr. Lochemes neither reviewed the MRI results with her nor provided a diagnosis for her left knee. And, she did not receive the physical therapy Dr. Lochemes recommended. So, the Court gives little weight to Dr. Lochemes's statement that he recommended no further treatment.

These facts also show why Smith & Nephew's reliance on *Tate* and *Coolidge* is misguided. In both cases, multiple doctors determined that additional treatment was unnecessary after considering the employee's medical conditions. Only Dr. Lochemes has evaluated Ms. Bracy, and his decision to end treatment was based on a strained doctor-patient relationship rather than on Ms. Bracy's medical condition.[5]

The inquiry, however, does not end here. The Court next considers Smith & Nephew's noncompliance argument. Tennessee Code Annotated section 50-6-204(d)(8) provides,

> If the injured employee refuses to comply with any reasonable request for examination or to accept the medical or specialized medical services that the employer is required to furnish under this chapter, the injured employee's right to compensation shall be suspended and no compensation shall be due and payable while the injured employee continues to refuse.

The Tennessee Supreme Court has interpreted this provision to mean that in circumstances where an employee is noncompliant with medical treatment, "compensation shall be held in abeyance, not terminated." *Blevins v. Pearson Hardwood Flooring Co.*, 144 S.W.2d 781, 783 (Tenn. 1940). Ms. Bracy credibly testified that she suffers with ongoing knee pain and desires medical treatment. Thus, the Court finds that Ms. Bracy's failure to attend appointments with Dr. Sokoloff does not bar her right to receive additional medical benefits.

Based on the foregoing, Ms. Bracy is likely to prevail in showing entitlement to medical treatment. Therefore, Smith and Nephew shall provide Ms. Bracy a panel of orthopedic physicians, which may include Dr. Sokoloff.

The Court next considers Ms. Bracy's request for reimbursement for the forty hours

---

[5] Further, *Tate* was decided using a "preponderance of the evidence" standard rather than the "likely to prevail" standard used in Expedited Hearings, and the employee failed to file a transcript, statement of the evidence, or a brief on appeal.

of sick time she used while treating for her knees. The Workers' Compensation Law does not provide for this benefit. Therefore, the Court cannot order the requested reimbursement of sick time.

Turning to the issue of temporary disability benefits, Ms. Bracy must show (1) total disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Shepherd v. Haren Constr. Co., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016). No medical proof showed that Ms. Bracy was disabled from working, so she is unlikely to prevail at a hearing on her claim for temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Smith & Nephew shall provide Ms. Bracy with a panel of physicians, which may include Dr. Bret Sokoloff, from which she may select a new authorized treating physician to provide continued medical treatment under Tennessee Code Annotated section 50-6-204.

2. Ms. Bracy's request for temporary disability benefits is denied.

3. This case is set for a Status Hearing on **April 18, 2022**, at **9:00** a.m. Central Time. You must call 615-532-9550 or toll-free at 866-943-0014 to participate in the Hearing. Failure to call might result in a determination of the issues without your participation.

**ENTERED March 2, 2022.**

_____
**Judge Deana C. Seymour**
**Court of Workers' Compensation Claims**

APPENDIX

Technical Record
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Notice of Appearance
4. Request for Expedited Hearing, along with Ms. Bracy's Rule 72 Declaration
5. Employer/Carrier's Medical Records Table of Contents
6. Employer/Carrier's Witness List

5

7. Employer/Carrier's Exhibit List
8. Employer/Carrier's Expedited Hearing Pre-Trial Brief

Exhibits
1. Medical records filed by Smith & Nephew on February 7, 2022 (Collective)
2. Letter from Dr. Simon Tesfau dated November 18, 2021
3. Petition for Benefit Determination
4. Employee's Choice of Physician form selecting Dr. John Lochemes
5. Employee's Choice of Physician form selecting Dr. Robert Lonergan
6. Employee's Choice of Physician form selecting Dr. Barry Phillips
7. Separation Notice
8. Affidavit of Christina Kilby
9. Letter from mediator Jeannie Henderson dated September 15, 2021
10. Wage Statement

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on March 2, 2022.

| Name | Certified Mail | Regular mail | Email | Service sent to: |
|---|---|---|---|---|
| Mary Bracy, Self-Represented Employee | X | X | X | 255 Elder Road Memphis, TN 38109 bracymary@gmail.com |
| Paul Nicks, Employer's Attorney | | | X | pnicks@travelers.com |

_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____      ☐ Motion Order filed on _____

☐ Compensation Order filed on_____      ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*